**MALNOVE INCORPORATED OF NEBRASKA, d/b/a Malnove Incorporated, a Nebraska corporation, Plaintiff,**

v.

**HEARTHSIDE BAKING CO., INC., d/b/a Maurice Lenell Cooky Company, an Illinois corporation, Defendant.**

**No. 95 C 4861.**

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 31, 1996.

Jonathan A. Backman, Thomas A. Lidbury, Gould & Ratner, Chicago, IL, for Plaintiff.

Gene H. Hansen, Aronberg Goldgehn Davis & Garmisa, Chicago, IL, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MORTON DENLOW, United States Magistrate Judge.

The Court conducted a two-day bench trial on October 21 and 22, 1996. The Court has considered the testimony of the four witnesses called to testify, Patrick Buckley, Terry Cohen, Wayne Cohen and Patrick Murnane, has reviewed the exhibits introduced into evidence, has studied the legal authorities cited by the parties in their written submissions and has listened to the fine closing arguments of counsel. The Court enters the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

### I. THE PARTIES

1. Plaintiff Malnove Incorporated of Nebraska, d/b/a Malnove Incorporated ("Malnove") is a Nebraska corporation with its principal place of business in Omaha, Nebraska. Malnove is engaged in the business of manufacturing and selling printed folded cartons.

2. Defendant Hearthside Baking Co., Inc., d/b/a Maurice Lenell Cooky Company ("Maurice Lenell"), is an Illinois corporation with its principal place of business in Chicago, Illinois, engaged in the business of manufacturing, packaging and selling bakery goods. In connection with its business, Maurice Lenell purchases millions of printed folding cartons per year to package the cookies it manufactures.

### II. JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), because there is complete diversity of citizenship and the amount in controversy exceeds $50,-000.00, exclusive of interest and costs. Venue lies in this district pursuant to 28 U.S.C. § 1391(a).

### III. THE MERITS

4. This dispute involves two claims by Malnove arising out of two orders by Maurice Lenell to purchase printed folding cartons to package its cookies. The first claim involves the amounts remaining due and owing on the delivery of 250,000 printed folding cartons known as 20 oz. Family Favorite boxes ("Family Favorite claim"). The second claim involves the amounts remaining due and owing on the order of 500,000 printing folded cartons known as 20 oz. Pinwheel Cookie boxes ("Pinwheel claim"). Illinois substantive law governs this dispute.

### A. FAMILY FAVORITE CLAIM

5. The parties entered into a contract for the manufacture and sale by Malnove of 250,000 Family Favorite boxes pursuant to Maurice Lenell purchase order No. 30658 dated October 29, 1993 (Px 2), and Malnove acknowledgment No. 16860 dated November 4, 1993 and executed by Terry Cohen on behalf of Maurice Lenell on November 12, 1993. (Px 3). Pursuant to this contract, Malnove manufactured and delivered all 250,000 of the Family Favorite boxes.

6. Maurice Lenell has paid for all of the Family Favorite boxes, except for the final shipment of 30,000 boxes which were invoiced in the amount of $4,140.00 on January 31, 1995 pursuant to invoice No. 93577. (Px 4).

7. Maurice Lenell seeks to justify its refusal to pay for the final shipment by claim-

ing that the purchase price included purchase of the dies and printing plates used in the production of the Family Favorite boxes. Maurice Lenell claims that the value of the dies and printing plates was $836.00. (Dx 12). Maurice Lenell claims that in the negotiations leading up to the issuance of its purchase order, Malnove advised Maurice Lenell that the price quotes include "all printing plates and cutting dies necessary to duplicate these cartons." (Dx 9). In the industry, there are two basic ways to charge for printing plates and dies: first, as a separate extra charge or second, to amortize the cost over the price of the production run. In neither event is it customary for the purchaser to receive the printing plates and dies. The Court finds that the purchase order did not contemplate or expressly include the purchase by Maurice Lenell of the printing plates and dies. (Px 2). In fact, in none of the prior dealings between the parties did Maurice Lenell ever receive the printing plates and dies. Although the final shipment of the Family Favorite boxes was made in January, 1995, Maurice Lenell did not ask for the printing plates and dies until after suit was filed. Maurice Lenell was not justified in withholding payment for the final shipment of the Family Favorite boxes.

8. The acknowledgment form agreed to by the parties provides that Maurice Lenell is liable for a finance charge of 1½% per month on all past due invoices and all expenses and fees, including reasonable attorneys' fees, for collection of past due amounts. (Px 3, ¶ 15).

9. Maurice Lenell breached its agreement by failing to pay invoice No. 93577 on or before February 28, 1995 and is liable in the amount of $4,140.00, plus finance charges at the rate of 1.5% per month ($62.10) from March 1, 1995 to October 31, 1996 (20 × $62.10 = $1,242.00), plus costs and reasonable attorneys' fees.

## B. PINWHEEL CLAIM

10. As of the summer of 1993, pinwheel cookies were Maurice Lenell's best selling cookie in the Chicago market. During that period, Maurice Lenell began discussions with certain key customers about the possibility of introducing a new size, a 20 oz. box, into the marketplace. At the same time, Maurice Lenell began developing a new design and interviewing box manufacturers about this new product. The financial negotiations were handled by Patrick Buckley, Malnove's Midwest Regional Manager, and Terry Cohen, Maurice Lenell's President. In the course of these negotiations, Terry Cohen expressed his confidence in the proposed new product by predicting that "they would be flying off the shelf" and that "we want them as fast as you can produce them." The Court finds extremely credible the testimony of Patrick Buckley explaining his dealings with Terry Cohen and Wayne Cohen.

11. From August 30, 1993 to October 28, 1993, Patrick Buckley sent Wayne Cohen and Terry Cohen three written price quotations for the pinwheel cookies. On October 29, 1993, Patrick Buckley met with Terry Cohen to finalize negotiations for the pinwheel cookie boxes. Terry Cohen ordered 500,000 boxes at a price of $122.31 per thousand. Terry Cohen selected the volume of boxes and understood that in reliance upon Maurice Lenell's order, Malnove would proceed to order all of the polyboard it would need to manufacture the boxes. Terry Cohen understood that the larger the run, the better the price he could receive from Malnove. Maurice Lenell received a price discount by ordering 500,000 boxes from Malnove.

12. On October 29, 1993, Maurice Lenell issued its purchase order No. 30659 for 500,-000 pinwheel boxes, "As Per Our Release." (Px 6). On November 10, 1993, Malnove issued its acknowledgment No. 16880 for the pinwheel cookie boxes and therein stated that the "Price is based on inventory shipping 90 days from date of completion. At 90 days, inventory will be billed, and will be shipped 30 days after billing." (Px 7). This acknowledgment was never executed by Maurice Lenell. Between the summer of 1993 and March 8, 1994, the parties worked together to finalize the design and to approve the final form of the new pinwheel cookie boxes. (Px 8). On or about March 9, 1994, Wayne Cohen signed and returned a fax from Lori Bruner, a Malnove customer service representative, approving the final issue

regarding the pinwheel cookie carton and authorizing production to begin. (Px 8, bates P00274). This document and the prior course of dealing constitute an agreement with respect to the terms and conditions contained on the reverse side of the acknowledgment and approval of the order for all 500,000 pinwheel boxes.

13. Shortly thereafter, Malnove manufactured all 500,000 pinwheel cookie boxes and delivered the first truckload of 144,000 boxes to Maurice Lenell on or about March 28, 1994. (Px 10 and 11). On March 28, 1994, Malnove invoiced Maurice Lenell $17,612.64 for the first shipment which Maurice Lenell paid on April 29, 1994. (Px 11). Malnove stored the remaining boxes while awaiting further release from Maurice Lenell.

14. Shortly thereafter, Maurice Lenell's plans for its 20 oz. pinwheel cookies received a setback when certain key customer buyers were replaced. Maurice Lenell did not inform Malnove as to when it intended to take further delivery.

15. From time to time between April, 1994 and April, 1995, Patrick Buckley contacted the Cohens and requested that they take further delivery of the pinwheel boxes. These contacts included numerous telephone calls and personal visits. The only response he received from the Cohens was that Maurice Lenell would take the boxes when they wanted them and they did not want them yet.

16. The understanding under the parties' contract and in the industry is that Maurice Lenell was obligated to take delivery of all 500,000 cookie boxes within a reasonable period of time. 810 ILCS 5/2–309(1); 810 ILCS 5/1–102(3); *Nasco v. Dahltron Corporation,* 74 Ill.App.3d 302, 30 Ill.Dec. 242, 247, 392 N.E.2d 1110, 1115 (2nd Dist.1979) ("While the time for the production of the 900 additional units was not stated, the order was referenced to a schedule to be worked out; and the law would imply that performance of the contract would be within a reasonable time."). The Court finds that a reasonable period of time for Maurice Lenell to take delivery was no later than December 31, 1994, approximately nine months after the initial shipment. This time period reflects the optimistic predictions by Terry Cohen, the fact that Maurice Lenell ordered twice as many of the pinwheel boxes as the Family Favorite boxes and the record of Maurice Lenell deliveries from other suppliers. Maurice Lenell has refused to take any further delivery and at trial estimated that it will not require more 20 oz. pinwheel boxes until early 1997.

17. As of January 1, 1995, Maurice Lenell became liable for $44,465.80 for the remaining 363,550 pinwheel cookie boxes, plus a 1½ % per month finance charge pursuant to the acknowledgment and storage charges of $250.00 per month as incidental damages pursuant to 810 ILCS 5/2–710. *GNP Commodities, Inc. v. Walsh Heffernan Co.,* 95 Ill.App.3d 966, 51 Ill.Dec. 245, 258, 420 N.E.2d 659, 672 (1st Dist.1981) ("Under section 2–710 of the Code, incidental damages includes expenses for care and custody of the goods."). Maurice Lenell shall have thirty (30) days from the date of judgment to advise Malnove what it wants done with the remaining pinwheel boxes and Maurice Lenell shall assume responsibility for the storage charges if it elects not to have the remaining boxes delivered to its plant. In the event Maurice Lenell fails to provide delivery instructions or fails to assume responsibility for the storage charges, Malnove shall be free to dispose of the pinwheel boxes without further responsibility.

18. The pinwheel boxes were produced in one production run and this was reasonably foreseeable by Maurice Lenell who wanted to be certain that all of the boxes were available immediately upon its request. Maurice Lenell cannot reasonably expect Malnove to have all the boxes available and then refuse to advise Malnove of a reasonable delivery schedule. Malnove was left with no recourse but to file suit.

19. Maurice Lenell was aware of Malnove's standard terms and conditions contained on the reverse side of Malnove's acknowledgment form and it accepted those terms and conditions in its dealings with Malnove. Maurice Lenell breached its agreement with Malnove by failing to accept delivery of the remaining pinwheel boxes by December 31, 1994.

20. The Court also finds credible the testimony of Patrick Murnane, a Vice President of Murnane Packaging Corporation, who testified that in his experience, a purchaser such as Maurice Lenell becomes liable for all quantities of boxes requested in its purchase orders. Furthermore, even Terry Cohen testified that he always took shipment of all merchandise he ordered, however, the period of time varied depending upon the industry.

21. Maurice Lenell owes Malnove the following sums as a result of its breach of contract in connection with the Pinwheel claim:

| | |
|---|---|
| Purchase price for remaining boxes | $ 44,465.80 |
| 1½% per month finance charge for period 1/1/95–10/31/96 ($666.99 × 22) | 14,673.78 |
| Incidental damages for storage for period 1/1/95–10/31/96 ($250 × 22) | 5,500.00 |
| Court costs and reasonable attorneys' fees—to be decided following judgment | $ ? |
| | $ 64,639.58 |

## IV. CONCLUSION

22. Judgment is entered in favor of plaintiff Malnove and against defendant Maurice Lenell in the amount of $5,382.00 on its Family Favorite claim and $64,639.58 on its Pinwheel claim for a total judgment of $70,021.58, plus court costs and reasonable attorneys' fees. The parties shall follow new Local Rules 46 and 47 with respect to resolving the issue of reasonable attorneys' fees and related non-taxable expenses, if any. A status report on the issue of attorneys' fees and related non-taxable expenses is set for January 16, 1997 at 10:00 a.m.